In the Matter of the Application of the NEW YORK CENTRAL RAILROAD COMPANY, Respondent, for a Peremptory Order of Mandamus against MORRIS S. TREMAINE, Comptroller of the State of New York, Appellant.

Third Department, January 11, 1935.

John J. Bennett, Jr., Attorney-General [*Caleb Candee Brown, Jr.,* Assistant Attorney-General, of counsel], for the appellant.

Whalen, McNamee, Creble & Nichols [*Kenneth Creble* of counsel], for the respondent.

HILL, P. J. The Comptroller of the State appeals from a peremptory order of mandamus directing him to draw his warrant upon the Treasurer of the State in the sum of $25,510.02, payable to the New York Central Railroad Company. All agree that between May, 1926, and March, 1929, the railroad company expended $691,399.94 in connection with the elimination of the Dyckman street grade crossing in New York city. The Transit Commission has approved vouchers for that amount, also a voucher for $52,061.27 interest thereon. The Comptroller has audited and paid to the railroad company the State's share of the principal sum, and has audited and rejected the voucher for the State's share of interest. The order appealed from directs its payment.

Grade crossing elimination projects were carried on under sections 91 to 95 of the Railroad Law (which will be referred to hereafter as the Railroad Law) until after the $300,000,000 elimination

amendment of the Constitution was adopted in 1925, and statutes enacted thereunder. While this elimination was not commenced until 1926, an order in reference thereto had been made by the Transit Commission in 1924. If it be determined that the Railroad Law applies, it was proper to charge the State interest, and the order should be affirmed. However, if the acts adopted after the constitutional amendment (Laws of 1926, chap. 510, and Laws of 1928, chap. 677) apply, interest is not chargeable to the State, and the order should be reversed.

The Transit Commission, by an order dated December 9, 1924 (amended immaterially as to the issues here presented on December 19, 1924), directed the elimination of several grade crossings in the city of New York, including that at Dyckman street. The order, reciting that the obligations of the State on account of grade crossing eliminations earlier ordered were not fully paid, and that the appropriations already made were insufficient to pay the State's share of the expense, directed that the provisions as to work ordered should be effective only " upon the appropriation by the State of its share of the moneys necessary for such construction." Chapter 779 of the Laws of 1926, effective as of May fifth of that year, appropriated and made immediately available $50,000,000 " out of moneys realized from the sale of bonds issued in accordance with the provisions of section fourteen of article seven of the constitution of the State " (the $300,000,000 grade crossing elimination amendment adopted November 3, 1925). On May 19, 1926, the Transit Commission, by an order reciting that funds had been appropriated and were then available, directed that the elimination of the Dyckman street crossing proceed, the railroad to prepare and submit plans and specifications.

The Railroad Law controlled elimination projects ordered by the State and to the expense of which it contributed until April 19, 1926, when chapter 510 of the Laws of 1926 (which will be referred to hereafter as the 1926 law) became effective. Section 6 thereof states: " The provisions of this act shall not affect any proceeding now pending for the elimination of grade crossings, where the state's share of the cost, pursuant to section ninety-one of the railroad law, has already been fully appropriated; such proceedings may be conducted to their termination in the manner now provided by law. In any pending proceeding where such share of cost has not been provided by appropriation by the legislature either in whole or in part, this act shall have application." As chapter 779 earlier referred to was enacted thereafter, clearly this elimination proceeding was commenced under the 1926 law, and until its repeal continued thereunder.

The railroad company alleges in its petition that on June 25, 1926, it notified the Transit Commission that " it elected to pay directly out of its own funds and without aid by the State the whole of the expense to be borne by *it* on the aforesaid elimination." This was in conformity with section 3 of the 1926 law. " The proceeds of state bonds, to be issued pursuant to law and section fourteen of article seven of the constitution, shall be used in the first instance to pay the entire expense of any elimination of a grade crossing ordered by the commission under this act, unless the railroad corporation or the city shall elect to pay directly out of its own funds and without aid by the state the whole or any portion of the expense to be borne by it in the elimination of any crossing." The notice by the railroad company considered in connection with the quotation from the act indicates an understanding by the company that the elimination was to go forward under the 1926 law.

Chapter 677 of the Laws of 1928 (which will be referred to hereafter as the 1928 law), effective March twenty-seventh of that year, superseded the 1926 law. By section 14 it is provided: " This act shall apply to all proceedings in which orders have been issued or which have been commenced subsequent to the enactment of chapter five hundred and ten of the laws of nineteen hundred and twenty-six or such act as amended and such proceedings shall be conducted to their termination in the manner prescribed by this act, and payments shall be made in the proportion of cost and in the manner prescribed by this act." While orders had been made by the Transit Commission in December, 1924, concerning several grade crossings, including that at Dyckman street, action thereunder had been stayed until money had been appropriated to cover the State's share of the expense. Subsequent to the enactment of the 1926 law, an order was " issued " making operative as to Dyckman street the December, 1924, general order and work on the project was " commenced." Thus the work which had been commenced under the 1926 law was to be continued under the 1928 law.

Section 12 of the 1928 law reads: " The provisions of this act shall not affect any proceeding now pending for the elimination of any grade crossing in which an order for such elimination had been made by the transit commission prior to the enactment of chapter five hundred and ten of the laws of nineteen hundred and twenty-six if funds therefor are now available, but such proceedings may be conducted to their termination in the manner then provided by law." Taken from its context and forgetting the history of elimination legislation, it might seem to be in conflict

with the conclusion I have reached and with section 14 of the same act. Under the Railroad Law, the State's share of the expense was paid from current yearly appropriations and subdivision 8 of section 94 provided that at the completion of an elimination project an accounting should be had " between the railroad corporation and the municipal corporation or the superintendent of public works of the amounts expended by each with interest, and if it shall appear that the railroad corporation or the municipal corporation or the superintendent of public works has expended more than its or his proportion of the expense of the crossing as herein provided, a settlement shall be forthwith made." From and after 1926 the State was to make appropriations from the $300,000,000 bond issue and as earlier stated in detail, $50,000,000 thereof was made immediately available by chapter 779 of the Laws of 1926. The 1926 and the 1928 laws each provided that the proceeds of the sale of bonds " shall be used *in the first instance* to pay the cost of any elimination of any grade crossing ordered by the transit commission." Either the railroad company or the municipality was permitted immediately to repay its share of the expense or arrange a later date for repayment. Both the 1926 and the 1928 laws negative the thought of an interest payment by the State as money from the bond issue would always be available for the State's share of the expense, and bonds had been sold (Laws of 1926, chap. 779) to provide and make immediately available $50,000,000. It could not have been the intention of the Legislature that this money should lie idle while the State paid a second interest charge to the railroad company. With these facts in mind, it seems clear that section 12 of the 1928 law applied only to those projects where orders had been made, work actually commenced and current appropriations made before the enactment of the 1926 law.

The railroad company argues that irrespective of the conclusion reached after a consideration of the statutes, the order should be affirmed, as the approval by the Transit Commission is final, it not having been reviewed by certiorari or otherwise. With this I do not agree. The act making the appropriation used on this project (Laws of 1926, chap. 779) provides: " The moneys hereby appropriated shall be expended for the elimination of grade crossings on vouchers approved by the state transit commission after audit by and on the warrant of the comptroller." This was in conformity with the relevant provision of the State Constitution (Art. 5, § 1): " The Comptroller shall be required: (1) To audit all vouchers before payment and all official accounts." The approval of the vouchers by the Transit Commission was

a ministerial act showing the items of work and material used upon the project and that computations were correct. It did not purport to determine judicially the legality of payments to be made by the State or other contributing parties. The Comptroller's duty of audit, however, involved a judicial function. (*People ex rel. Desiderio* v. *Conolly*, 238 N. Y. 326; *Matter of Equitable Trust Co.* v. *Hamilton*, 226 id. 241; *People ex rel. Grannis* v. *Roberts*, 163 id. 70.) The approval by the Commission did not limit the scope of the Comptroller's judicial powers.

The order should be reversed on the law, with fifty dollars costs and disbursements, and the application denied.

RHODES, MCNAMEE, CRAPSER and HEFFERNAN, JJ., concur.

Order reversed on the law, with fifty dollars costs and disbursements, and application denied, with costs.